
# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONITA LEDERLE,<br><br>        Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No.: 1:09-cv-01736 JLT<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 13)<br><br>ORDER ON DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 18)<br><br>ORDER DIRECTING REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF LONITA LEDERLE AND AGAINST DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER |

Plaintiff, Lonita Lederle asserts she is entitled to disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") failed to properly assess the opinions of her treating physician and treating chiropractor and to properly determine Plaintiff's residual functional capacity and erred in the use of a vocational expert. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, the Court remands this matter for further proceedings.

///

# PROCEDURAL HISTORY[1]

Plaintiff filed an application for disability insurance benefits on August 1, 2005, alleging disability beginning November 12, 2004.  AR at 85.  The Social Security Administration denied her claim on December 9, 2005, and upon reconsideration denied the claim again on September 12, 2005.  *Id.* at 70-74, 76-80.  Plaintiff requested a hearing, which was held on June 4, 2007.  *Id.* at 282.  The ALJ issued a decision denying benefits on August 22, 2007.  *Id.* at 55-62.

Plaintiff requested review by the Appeals Council of Social Security ("Appeals Council"), which issued an order vacating the ALJ's decision and remanding the case on March 13, 2008.  AR at 34-35.  The order directed the ALJ "to obtain evidence concerning the claimant's musculoskeletal impairment, further consider the claimant's residual functional testimony and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base."  *Id.* at 14; *see also id.* at 35.  Pursuant to this order, the ALJ held a hearing on May 19, 2008.  *Id.* at 293-307.

The ALJ determined Plaintiff was not disabled since November 14, 2004, and issued an order denying benefits on September 16, 2008.  AR at 14-21.  Plaintiff requested a review by the Appeals Council on the ALJ's second decision, which was denied on July 24, 2009.  *Id.* at 5-7.  Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

# STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under Title II of the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered disabled only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1994). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 416.927, 416.929.

A.   Relevant Medical Evidence

Plaintiff began receiving treatment from Dr. Eric Luttrell, a chiropractor, on April 26, 1998. AR at 216.  Beginning November 12, 2004, Plaintiff received treatment from Dr. Robert Chin, M.D. *Id.* at 209.  As part of her treatment, Dr. Chin referred Plaintiff for consultations with Dr. Louis Nelson, Dr. F. Karl Gregorius, and Dr. James Barnett.  *See id.* at 156, 167, 185.

On December 6, 2004, Plaintiff had an MRI scan done on her lumbosacral spine by Dr. Michael Dumars, who determined: "Broad based disc bulging is noted at L4-5 with significant narrowing of the intervertebral disc also noted at this level.  L3-4 mild circumferential annual bulging is also noted with mild narrowing of the intervetebral disc.  There is a small superimposed disc herniation in the right paracentral location." AR at 155.  Further, Dr. Dumars noted the other levels of Plaintiff's spine "do not show a large disc bulge or herniation," but there was "moderate degeneration of the lower lumbar facets." *Id.*

Dr. Nelson performed a neurosurgical consultation upon the request of Dr. Chin on March 16, 2005.  AR at 156-58.  At the time, Plaintiff stated she wished to return to work on April 1, 2005, though "twisting, sitting, or moving aggravate[d] the pain." *Id.* at 156.  Plaintiff reported "physical therapy, acupuncture, chiropractic, and two epidural steroid injections, all of which helped especially the second epidural steroid." *Id.*  Plaintiff could flex 90 degrees, and could bend over to where her fingertips were six inches from the floor.  *Id.* at 157.  Lateral bending was normal, and Plaintiff could walk on her heels and toes.  Further, Plaintiff's motor strength was equal bilaterally.  *Id.*  After the consultation, Dr. Nelson opined, "At this point in time she has recovered . . . I think it reasonable for her to return to work." *Id.* at 158.

Dr. Gregorius performed a neurosurgical consultation on May 17, 2005.  AR at 167.  Plaintiff reported having "chiropractic therapy, physical therapy, acupuncture, and two epidural steroid injections none of which have helped." *Id.*  Also, Plaintiff stated she could not stand or walk without severe pain, which she reported to be a level seven out of ten.  *Id.*  Dr. Gregorius found Plaintiff could "flex the lumbar spine to 90º" and "palpable paraspinous muscle spasm in her lower thoracic muscles to her lumbar muscles." *Id.*  Dr. Gregorius opined, "I don't believe there is any doubt that the patient is disabled from her job based on her history or examination today." *Id.* at 168.

1    Dr. Sandra Clancey reviewed Plaintiff's medical record and provided a physical residual functional capacity assessment on September 12, 2005.  AR at 174-81.  Dr. Clancey believed Plaintiff could frequently lift and carry ten pounds, and occasionally lift and carry twenty pounds.  *Id.* at 175.  Also, Plaintiff could stand and sit with normal breaks for a total of six hours each in an eight-hour work day.  *Id.*  Plaintiff's ability to push and pull was unlimited.  *Id.*  Dr. Clancey opined that Plaintiff's postural limitations regulated her to occasionally climbing, balancing, stooping, kneeling, crouching, and crawling.  *Id.* at 176.  Supporting her findings, Dr. Clancey noted Plaintiff's conservative treatment and that she expected the "recent flare to gradually resolve as it has in the past."  *Id.* at 179.

On November 1, 2005, Dr. Barnett examined Plaintiff per the referral of Dr. Chin.  AR at 185.  Summarizing Plaintiff's subjective complaints, Dr. Barnett wrote:

> This patient has complaints of low back pain in the left hip and buttock area extending at the left side of her paraspinous muscles to her shoulder blades.  This has been ongoing for one year, unknown causes sudden and abrupt now daily, worse as the day goes on.  Her pain averages 5/10 and often described as burning.  She denies muscle weakness, numbness, tingling, bowel or bladder dysfunction.  Most activities aggravate her pain; only passive measures alleviate her pain.  Curiously application of heat bothers her.

*Id.*  Dr. Barnett noted "steroid injections, acupuncture [and] chiropractic care . . . were somewhat helpful and physical therapy was not."  *Id.*  He provided a sacroiliac joint belt that "provided her with some immediate relief upon application."  *Id.* at 186.  Dr. Barnett examined Plaintiff again on December 12, 2006, at which time Plaintiff reported difficulty "with standing and walking for greater than an hour;" she would have to "stop and stretch," which helped Plaintiff.  AR at 224.  Dr. Barnett noted, "She is doing much better so she is going to postpone [any] further injection treatment."  *Id.*  In addition, Plaintiff's visual analog scale for pain score was two out of ten.  *Id.*

On May 22, 2007, Dr. Chin completed a physical assessment of Plaintiff's ability to do work-related activities.  AR at 210-13.  Plaintiff was diagnosed with degenerative disc disease, piriformis syndrome, and hip bursitis.  *Id.* at 209.  For this, Dr. Chin noted he had proscribed anti-inflammatory medication and referred her to Dr. Barnett.  *Id.*  On the checklist form, Dr. Chin indicated Plaintiff could lift and carry up to 10 pounds frequently and 11 to 20 pounds occasionally, but not lift or carry anything more than 20 pounds.  *Id.* at 210.  She could sit up one hour without interruption and four

hours total. *Id.* Plaintiff could stand and walk for one hour each, and occasionally stoop or crouch, but could never climb, balance, kneel, or crawl. *Id.* at 210-11. In addition, Plaintiff was to avoid "moderate exposure" to moving machinery. *Id.* at 212.

Dr. Luttrell also completed a physical assessment of Plaintiff's abilities on May 22, 2007. Dr. Luttrell stated Plaintiff had "lumbar disc bulges with herniation at L3-4." AR at 216. He noted Plaintiff had "slight improvement in pain reduction," and referred her to her a primary medical doctor for management. *Id.* Dr. Luttrell opined Plaintiff could lift and carry up to ten pounds occasionally, but never more than ten pounds. *Id.* at 217. Further, Dr. Luttrell stated Plaintiff could sit for four hours total with a break each hour, stand for one hour, and walk for two hours with a break each hour. *Id.* Plaintiff could not perform any postural activities, such as climbing or balancing, but could perform most physical functions with the exception of pushing and pulling. *Id.* at 218. Dr. Luttrell stated Plaintiff did not have to avoid moving machinery, but needed to avoid exposure to heights, wetness, and temperature extremes. *Id.* at 219.

Dr. Paul Kaplan examined Plaintiff in conjunction with a worker's compensation claim and diagnosed her with lumbosacral disc syndrome with associated strain/sprain disorder and lumbosacral radiculopathy on January 19, 2007. *See* AR at 253-61. Dr. Kaplan noted Plaintiff reported "constant slight to moderate pain." *Id.* at 260. Testing revealed Plaintiff had a "[r]educed range of motion of the lumbosacral spine in all planes to 75% of normal" and "[t]ender, painful, left-sided paraspinal muscle spasms were noted at the level of the L4 vertebral body." *Id.* at 258. Dr. Kaplan opined, "The patient has a permanent disability precluding substantial work. She has lost approximately 75% of her preinjury (sic) capacity for performing activities such as bending, stooping, lifting, pushing, pulling, climbing, or other activities involving comparable physical effort." *Id.* at 261.

On April 29, 2008, Dr. Chin completed another physical assessment regarding Plaintiff's work-related abilities. AR at 246-50. He noted Plaintiff's response to treatment, which included "Soma, Vicodin, muscle relaxers [and] Cortisone shots," was "fair." *Id*. at 246. Again he opined Plaintiff could frequently lift and carry up to ten pounds and occasionally 11 to 20 pounds, but never more than twenty pounds. *Id.* at 247. In addition, the limitations on standing, sitting, and walking

1  continued. *Id.* at 247; *see id.* at 210. Dr. Chin opined Plaintiff could never climb, balance, kneel, or
2  crawl; she could occasionally stoop and crouch. *Id.* at 248. Thus, Dr. Chin's opinions of Plaintiff's
3  limitations remained the same.
4     Dr. Luttrell completed a physical assessment of Plaintiff again on May 12, 2008, noting that
5  that he treated Plaintiff with "chiropractic manipulation." AR at 241. Dr. Luttrell limited Plaintiff to
6  lifting and carrying up to ten pounds occasionally; sitting for four hours with a break each hour;
7  standing for one hour without a break; and walking for a total of two hours with a break each hour.
8  *Id*. at 242. In addition, Dr. Luttrell stated Plaintiff could not perform any postural activities and
9  could never push or pull, though she could occasionally reach. *Id.* at 243.

10 B.  Hearing Testimony

11     On June 4, 2007, Plaintiff and vocational expert ("VE") David Dettmer testified before the
12 ALJ at hearing. AR at 285-92. Upon remand, Plaintiff and Mr. Dettmer testified again on May 19,
13 2008. *Id.* at 295-307.

14     Plaintiff testified she had a "herniated disk, a bulged disk, degenerative disk disease and
15 bursitis in [her] left hip." AR at 285. Plaintiff stated she had "extreme pain" in her back "ever since
16 2004." *Id.* at 296. Plaintiff stated Dr. Chin was her primary care physician for about 25 years, and
17 that she saw him "[a]pproximately every two to three months." *Id.* at 298. In addition, Plaintiff said
18 she was treated by Dr. Luttrell for ten years, who would not adjust her back because of its condition.
19 *Id.* Plaintiff said Dr. Barnett had been treating her for pain management for about two years, during
20 which time he gave her three pain injections that helped for "around three to four months" each, but
21 she was unable to return to her former level of activities. *Id.* at 296-97. Plaintiff said she received
22 her last injection four days before the second hearing, at which time she received two shots. *Id.* at
23 297. Plaintiff stated she missed some pain injections due to an inability to pay her $250 co-pay. *Id.*

24     According to Plaintiff, she last worked in April of 2005, when she went in "for about two
25 days and . . . was in such chronic pain [she] couldn't work." AR at 285. Prior to working these two
26 days, Plaintiff stated the last time she worked was in November of 2004. *Id.* Plaintiff stated that in
27 her last working position, she was a "lead person" for Altman Industries, but not a supervisor. AR at
28 286. In her position, Plaintiff said she assisted with tasks such as unloading trucks and plants,

building garden centers for Target stores, and would "help other reps if they had merchandise problem[s] or sales were down." *Id*. at 286-87.  Plaintiff said that the job required her to drive "at least four" hours a day.  In addition, Plaintiff estimated that on an occasional basis she had to lift "at least 30 pounds" given the average weight of plants and displays with cinderblocks, which weighed about 35 pounds each. *Id.* at 287.

Prior to her position with Altman industries, Plaintiff stated she worked as a pest inspector. *Id.*  Plaintiff testified she could no longer do this work because it required "going into an attic or going into a crawl space." *Id.*  Also, Plaintiff worked for a company named "Boscov's," where she estimated that she had to lift "[a]pproximately 20 pounds" while unloading clothes from the merchandise trucks. *Id.* at 287-88.

Plaintiff stated that she lives alone, and does the cleaning and shopping "most of the time." AR at 299.  She estimated that without significant pain she can sit for an hour, stand for thirty minutes, and walk thirty minutes.  *Id.*  Plaintiff said she could lift ten pounds on a frequent basis.  *Id.*

The VE testified after Plaintiff at each hearing.  The VE characterized Plaintiff's past work as follows: "[P]est control sales rep work, DOT[2] 251357018, light, SVP 6.  Retail sales, 290477014, light, SVP 3.  Route truck driver, 292353010, medium, SVP 5.  Some agricultural inspection work, 168267098.  The DOT describes that as light, SVP 7 . . . Pest control technician . . . 389684010.  It's light, SVP 5." *Id.* at 288.  At the second hearing, the VE added the position of warehouse worker, DOT 922687059. *Id.* at 203.

The ALJ posed hypothetical questions to VE regarding whether work would be available to individuals with various limitations.  First, the VE considered an individual the same age as Plaintiff, with the same education and work experience.  AR at 288.  In addition, the ALJ gave the following limitations, based upon the assessment of Dr. Clancey: the person could lift 20 pounds occasionally and 10 frequently, and "[s]tand or sit six hours in an eight hour day, but could only occasionally climb, balance, stoop, kneel, crouch, or crawl." *Id.* at 288-89*; see also id.* at 174-81.  The VE

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

8

responded the "hypothetical restrictions would not preclude some of the jobs," and such as person could work as a pest control sales representative or in retail sales. *Id.* at 289. Also, the VE believed agricultural inspection work may fit within the description, but it was "kind of marginal." *Id.*

Next, the VE was asked to assume a person who was able to "walk a half mile and could sit for an hour or stand for an hour, but more than that at a time would cause pain and stiffness." AR at 289. The VE concluded that the individual could work as a pest control sales representative. *Id.* Further, such a person could do work in retail sales, but the base of work would be "severely impacted" with ninety percent of possible work eliminated. *Id.* at 289-90.

Upon remand, the ALJ asked the VE to assume again a person of the same age, education, and work experience of Plaintiff. AR at 303. The individual was "capable of only light work," and was limited to occasionally climbing, balancing, stooping, kneeling, crouching, or crawling. *Id.* Further, the person "must have the opportunity to change position from sitting or standing or vice versa hourly." *Id.* The VE opined the position of pest control sales would be within those restrictions; warehousing, plant sales, retail sales and pest control technician would not be possible with the postural limitations. *Id.* at 303-04.

Plaintiff's counsel asked the VE consider someone "who could sit for four hours total in an eight hour day, but only one hour without interruption." AR at 290. Also, the individual "could stand for one hour, but less than one hour without interruption;" "walk for one hour, but less than one hour without interruption;" "lift 10 pounds frequently, 20 pounds occasionally and could never climb, balance, kneel or crawl." *Id.* According to Plaintiff's counsel, these restrictions were placed on Plaintiff by her treating physician, Dr. Chin. *Id.* at 291. The VE opined that individual "would be precluded from full-time competitive employment" and no jobs would be available, given that the restrictions total less than eight hours a day. *Id.* at 290-91. This hypothetical was repeated at the second hearing, with clarification that the individual must take a break every 30 minutes when sitting, and a break every fifteen minutes when standing or walking. *Id.* at 305. Again, the VE opined no jobs would be available. *Id.* at 306.

///

///

C. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 12, 2004. AR at 16. Second, the ALJ found Plaintiff has a single severe impairment: degenerative disc disease. *Id.* This impairment did not meet or medically equal a listing because Plaintiff did "not have the nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in an inability to ambulate effectively necessary to meet the requirements of that listing." *Id.* at 18.

At the fourth step, to determine Plaintiff's residual functional capacity ("RFC"), the ALJ considered "the entire record." AR at 18; *see also* AR at 18-20. The ALJ determined Plaintiff had the RFC "to perform light work . . . except she should climb, balance, stoop, kneel, crouch or crawl only occasionally. In addition, the claimant must have the opportunity to change position hourly." *Id.* at 18. Plaintiff was "capable of performing past relevant work as a pest control sales representative, a semi-skilled light job." *Id.* at 20. Therefore, the ALJ concluded Plaintiff has not been disabled as defined by the Social Security Act from November 12, 2004 through the date of the decision. *Id.* at 21.

## DISCUSSION AND ANALYSIS

Prior to determining Plaintiff's RFC, the ALJ found Plaintiff had "mild restriction of activities of daily living, moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation." AR at 23. Evaluating the medical evidence, the ALJ stated,

> Greater weight is given to the opinion of Dr. Portnoff as to the claimant's physical limitations; no other doctor has given a residual functional capacity. As for the claimant's mental condition, greater weight is given to the opinion of the state agency doctors. The opinion of Dr. Michel (sic) is given less weight . . .

*Id.* at 26. In addition, the ALJ considered the testimony of the vocational expert in her determination that Plaintiff could perform unskilled, light work at in the national economy. *Id.* at 27-28.

A. The ALJ did not err in rejecting Plaintiff's treating physician.

A physician's opinion is not binding upon the ALJ when the ALJ provides "specific and legitimate" reasons for rejecting the opinion, supported by substantial evidence in the record. *Lester*,

1 | 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). When there is
2 | conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the
3 | conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict
4 | must be upheld by the court when there is "more than one rational interpretation of the evidence."
5 | *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the
6 | reviewing court must resolve conflicts in the evidence, and if the evidence can support either
7 | outcome, the court may not substitute its judgment for that of the ALJ"). Notably, the opinion of a
8 | treating physician may be rejected whether or not the opinion is contradicted by another.
9 | *Magallanes*, 881 F.2d at 751.

     1. The ALJ set forth specific and legitimate reasons for rejecting the opinion.

The ALJ gave "less weight" to the opinions of Dr. Chin and Dr. Luttrell that Plaintiff "is unable to perform even sedentary work." AR at 20. Specifically, the ALJ stated:

> The course of treatment pursued by the claimant's physicians has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported. The doctors also apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet . . . there exist good reasons for questioning the reliability of the claimant's subjective complaints.

*Id.* Thus, the ALJ rejected the opinions of Dr. Chin and Dr. Luttrell after considering the prescribed conservative treatment and for relying upon Plaintiff's subjective complaints.

*Conservative treatment*

Arguing against rejection of Dr. Chin's opinion, Plaintiff stated "the conservative, non invasive pain management course of treatment . . . in no way denigrated her pain symptoms or impairments." (Doc. 13 at 13). However, the record indicates the conservative treatment alleviated Plaintiff's pain. Contrary to Plaintiff's assertion, there is evidence supporting the ALJ's finding that the conservative treatment assisted Plaintiff in managing her pain As Defendant stated succinctly,

> The ALJ is supported by Dr. Chin's December 28, 2004 statement that [the epidural] treatment was helpful; Dr. Barnett's note that Plaintiff had experienced more than a year of relief after injection; and Plaintiff's hearing testimony, confirming that the injections provided relief. Dr. Barnett further noted that Plaintiff experienced immediate relief upon use of his prescribed sacroiliac joint belt.

(Doc. 18-1 at 11, internal citations omitted). Thus, the Court may not substitute its judgment for that of the ALJ. *See Matney*, 981 F.2d at 1019.

Previously, this Court determined, "A conservative course of treatment relative to a finding of total disability is a proper basis for discounting the extreme restrictions reported by a treating physician." *Nicola v. Astrue*, 2010 U.S. Dist. LEXIS 42099, at *22 (E.D. Cal. April 29, 2010), citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also, e.g., Phonn v. Astrue*, 2010 U.S. Dist. LEXIS 72743, at *4-5 (C.D. Cal. July 20, 2010) (the ALJ rejected the opinion of a treating physician rejected where it "could not be reconciled . . . with the relatively conservative treatment that he had proscribed," and the Court stated this was a "specific and legitimate reason" for discounting the opinion). Moreover, a condition that can be adequately controlled with medication and conservative treatment cannot be the basis of a claim for disability benefits. *See Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). Thus, the ALJ set forth a specific, legitimate reason for giving less weight to the opinion of Dr. Chin.

*Plaintiff's subjective complaints*

Plaintiff asserts that "there was no evidence that Dr. Chin 'relied quite heavily' or 'uncritically accepted' [her] subjective complaints in assessing her residual functional capacity." (Doc. 13 at 12). Rather, Plaintiff argues Dr. Chin's opinion "was based on clinical observations over a long period of time, objective MRI and x-ray evidence, as well as [Plaintiff's] subjective complaints." *Id.* In addition, Plaintiff cites *Ryan v. Comm'r of Soc. Sec.*, arguing "where a doctor does not discredit his patient's complaints, but supports the ultimate opinion with his own clinical observations, the ALJ cannot reject the medical opinion because he finds the claimant is not credible." *Id.*, citing *Ryan*, 528 F.3d 1194 (9th Cir. 2008).

Defendant argues, "The ALJ's determination that Dr. Chin relied on Plaintiff's subjective complaints is well founded, as he appropriately noted that, although Plaintiff had received treatment for her alleged impairment, the treatment was routine and conservative in nature." (Doc. 18-1 at 11-12). Defendant asserts Dr. Chin's treatment notes "described mostly unremarkable findings" and the

treatment of "physical therapy, acupuncture, and chiropractic care" was not the type of treatment expected to accompany finding that Plaintiff was totally disabled within the meaning of the Social Security Act. *Id.*

The fact that an opinion is based primarily upon a plaintiff's subjective complaints is a proper consideration. *Matney*, 981 F.2d at 1020. Notably, the ALJ found Plaintiff's subjective complaints lacked credibility[3], and Plaintiff does not challenge this finding. When a treating physician's opinion is based largely upon Plaintiff's own subjective description of her symptoms, and the ALJ has discredited the Plaintiff's claims as to those subjective symptoms, the ALJ may reject the treating doctor's opinion. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (a treating physician's opinion "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be rejected after a claimant is found to lack credibility); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) ("an opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted"). Here, in light of the conservative treatment, the ALJ concluded the Dr. Chin based his opinion largely upon Plaintiff's subjective complaints when assessing Plaintiff's functional capacity. Thus, this too was a specific and legitimate reason for giving less weight to the opinion of Dr. Chin.

2. The ALJ's set forth substantial evidence supporting rejecting of Dr. Chin's opinion.

Where an examining physician "provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007), quoting *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (internal quotations omitted). By itself, the contrary opinion of a non-examining physician does not constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, but when consistent with other evidence in the record, it can constitute substantial evidence. *Tonapetyan v.*

---

[3] The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible." AR at 19. The ALJ supported this finding by noting claimant has received conservative treatment; her injection therapy "has been generally successful" in controlling the symptoms; and Plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of totally disabling symptoms and limitations." *Id.* These are proper considerations in a credibility finding. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2007); *Thomas*, 278 F.3d at 958-59.

*Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Thus, where the ALJ rejects the opinion of a treating physician, at least in part, based on the opinion of a consulting physician, there must be additional evidence in the record to support the decision.  *Lester*, 81 F.3d at 832.  Here, the ALJ gave substantial weight to the opinions of Dr. Kaplan and Dr. Clancey.  AR at 20.

The opinion of Dr. Kaplan, an examining physician, may constitute substantial evidence to support the ALJ's conclusion if he offered independent clinical findings which resulted in (1) diagnoses differing from those offered by the treating physician and are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not considered.  *See Orn*, 495 F.3d at 632; *Magallanes*, 881 F.3d at 751.  The diagnoses offered by Dr. Kaplan differed from those of Dr. Chin; Dr. Kaplan diagnosed Plaintiff with lumbosacral disc syndrome with associated strain/sprain disorder and lumbosacral radiculopathy while Dr. Chin diagnosed Plaintiff with degenerative disc disease, piriformis syndrome, and hip bursitis.  *See* AR at 209, 253-61.  However, Dr. Kaplan conducted objective testing, including an "electrodiagnostic study" that differed from the musculoskeletal testing by Dr. Chin.  *Id.* at 258-59.  In the study, an "exploratory monopolar needle electrode was used to evaluate the patient's four extremities and associated cervical, thoracic and lumbosacral musculature." *Id*. at 258.  Dr. Kaplan "sampled [muscles] in the upper extremities bilaterally." *Id.* at 259.  As a result of the testing, Dr. Kaplan noted "electromyographic abnormalities were limited to the parasimpal muscles on the patient's left side at the L4 vertebral body level." *Id.* at 259.  Based upon these objective findings and his observations, Dr. Kaplan determined Plaintiff lost "approximately 75%" of her postural abilities.  *Id.* at 160.  Therefore, the opinion of Dr. Kaplan is substantial evidence to support the ALJ's decision to give less weight to Dr. Chin's opinion.

Likewise, the opinion of Dr. Clancey, which the ALJ gave "substantial weight," is substantial evidence.  Dr. Clancey opined Plaintiff could frequently lift and carry ten pounds, and occasionally lift and carry twenty pounds; Plaintiff's postural limitations regulated her to occasionally climbing, balancing, stooping, kneeling, crouching, and crawling.  AR at 175-76.  Thus, in this manner, Dr. Clancey's opinion is substantial evidence in favor of the RFC because it is consistent with other evidence in the record.  *Tonapetyan*, 242 F.3d at 1449.

B. The ALJ did not err in rejecting the opinion of Plaintiff's chiropractor.

The ALJ addressed the opinion of Dr. Luttrell as though presented by a treating physician. *See* AR at 20. However, as a chiropractor, Dr. Luttrell's opinion is entitled to less weight than that of a treating physician such as Dr. Chin. Notably, chiropractors are not included in the list of "acceptable medical sources" who may provide evidence to determine whether a claimant has a medically determinable impairment, but rather are named as "other sources" whose opinions may be considered. 20 C.F.R. § 404.1513(d). Opinions from "other sources" are given less weight than those from "acceptable medical sources" under the governing regulations. *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996). Consequently, "[t]he ALJ was not bound to accept a residual functional capacity assessment rendered by a chiropractor based on his own diagnosis. To do so would blur the line between the type of evidence which may be considered from acceptable medical sources, as against evidence from other sources." *Kottke v. Astrue*, 2008 U.S. Dist. LEXIS 73329, at *13 (C.D. Cal. Aug. 1, 2008).

An ALJ must "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). As a general rule, if the ALJ chooses to reject evidence from "other sources," the ALJ may not do so without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In addition, the ALJ must give specific, germane reasons for rejecting the opinion of the witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Here, the ALJ rejected Dr. Luttrell's opinion for relying heavily upon the subjective report of Plaintiff's symptoms and limitations which were contrary to the conservative treatment she received. AR at 20. Because these are specific, legitimate reasons for rejecting the opinion of a treating physician, who generally would be afforded the greatest weight, these reasons are also acceptable to reject the opinion of Plaintiff's chiropractor. Thus, the ALJ did not err in giving the opinion of Dr. Luttrell less weight.

C. The ALJ erred in incorporating Dr. Kaplan's findings and Plaintiff's limitations into the RFC.

In evaluating the medical opinions, the ALJ observed that "the report of [Dr. Kaplan], while noting that the claimant had reduced capacity to bend, stoop, lift, push, pull, or climb – all limitations that are incorporated into the residual functional capacity determined herein – does not

15

find the claimant incapable of all work activity." AR at 20. Specifically, Dr. Kaplan opined Plaintiff "has lost approximately 75% of her preinjury (sic) capacity for performing activities such as bending, stooping, lifting, pushing, pulling, climbing, or other activities involving comparable physical effort." *Id.* at 261. In addition, the ALJ stated Dr. Kaplan's opinion was given "substantial weight ... because it is well-supported by the weight of the evidence." *Id.* at 20.

Plaintiff argues that the opinion of Dr. Kaplan was not incorporated within the RFC as the ALJ stated, because the RFC "limited Ms. Lederle to occasional climbing, balancing, stooping, kneeling, crouching, or crawling," and "[o]ccasional is defined as up to 1/3 of the time." (Doc. 13 at 13). In addition, Plaintiff notes that the ALJ "did not include push/pull limitations at all" in the RFC. *Id.*

### 1. Limitations on climbing, stooping, and kneeling

Excluding "constantly" or "never," there are two words available for the ALJ's use in an RFC to describe the ability of a claimant to perform "exertional activities:" occasionally and frequently. *See* 1983 SSR LEXIS 30. The word "occasionally" is defined as "occurring from very little up to one-third of the time," while "frequently" is defined as "occurring from one-third to thirds of the time." 1983 SSR LEXIS 30; *see also Sparkman v. Astrue*, 2009 U.S. Dist. LEXIS 70968, at * 8-9, n.1 (E.D. Cal. Aug. 12, 2009). Dr. Kaplan opined plaintiff had approximately 25% of her capacity for performing the activities named above—an amount well within the range covered by the word "occasionally." Therefore, the ALJ incorporated Dr. Kaplan's restrictions into the RFC limiting the Plaintiff to occasional climbing, stopping, and kneeling into the RFC.

### 2. Limitations on lifting, pushing and pulling

Though the ALJ stated Plaintiff's reduced capacity to lift, push, and pull was "incorporated into the residual functional capacity," the RFC does not mention these limitations. *See* AR at 18, 20. The restriction to "light work" addresses Plaintiff's limitations in lifting, because light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 1983 SSR LEXIS 30. Further, the definition states, "A job is also [light work] when it involves sitting most of the time but with *some pushing and pulling* of arm-hand or leg-foot controls, which require greater exertion than sedentary work." *Id.* (emphasis added).

Notably, Dr. Clancey opined Plaintiff's ability to push and pull was unlimited. AR at 175. However, her opinion, by itself, is not substantial evidence in support of either rejecting Dr. Kaplan's opinion or in support of the RFC, which fails to mention pushing and pulling, thereby implying Plaintiff is not limited in these abilities. *See Tonapetyan*, 242 F.3d at 1149. Consequently, the ALJ did not properly address Plaintiff's limitations on pushing and pulling.

D.  The ALJ did not pose a proper hypothetical question to the vocational expert.

There are two methods for the Commissioner to establish a claimant can perform past relevant work or work in "significant numbers" in the national economy: testimony of a VE or the Medical-Vocational Guidelines. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). An ALJ may call a VE "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999), 62 Soc. Sec. Rep. Service 607. The ALJ may pose "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration" when eliciting testimony. *Id.*, quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987). The description of impairments "must be accurate, detailed, and supported by the medical record." *Id.* Limitations supported by substantial evidence must be included in the question. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *Osenbrock*, 240 F.3d at 1163-65. "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). When the "weight of the medical evidence supports the hypothetical questions posed by the ALJ," the ALJ's findings will be upheld by the court. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *see also Gallant*, 753 F.2d at 1456.

Plaintiff argues the testimony of the vocational expert has no evidentiary value because it "did not include Dr. Chin's assessed limitations." However, because the ALJ properly rejected the opinion of Dr. Chin, it was not necessary for her to include these limitations in the hypothetical question. Rather, it was necessary for the ALJ include the restrictions outlined by Dr. Kaplan in the questions posed to the VE. In the relevant hypothetical question, the ALJ asked the VE to consider

an individual who could lift 20 pounds occasionally and 10 frequently and "[s]tand or sit six hours in an eight hour day, but could only occasionally climb, balance, stoop, kneel, crouch, or crawl." AR at 288-89. Thus, the ALJ failed to include any mention of restrictions on pushing and pulling, although Dr. Kaplan opined Plaintiff had a reduced ability to perform these activities. Because Dr. Kaplan's opinion is substantial evidence, the ALJ should have included restrictions on pushing and pulling in the question posed to the VE. *See Robbins*, 466 F.3d at 886 (9th Cir. 2006). Therefore, the testimony of the VE is insufficient to determine whether Plaintiff could perform her past relevant work.

E.   Remand is appropriate in this matter.

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v. Ventura*, 537 U.S. 12, 16 (2002). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). An award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to properly reject Dr. Kaplan's opinion, or in the alternative, incorporate Dr. Kaplan's opinion into the RFC. In addition, the ALJ failed to address the limitations set forth by Dr. Kaplan in the hypothetical question posed to the vocational expert, Without restrictions of pushing and pulling, the vocational expert opined Plaintiff could perform work as a pest control sales representative, a job in which Plaintiff:

> Sells pest-control service to home owners and commercial concerns: Selects prospects in assigned territory from account file, list of firms with possible need, and from potential customers who have requested service. Calls on prospect to explain service. Inspects

1  premises to ascertain presence of vermin. Prepares contract for customers including such information as name of pest, area of infestation, and remedy required, based on knowledge of pest, structural damage, kinds of insecticides, and conditions conducive to pest development. Quotes price, obtains consent of customer, and schedules exterminator (any industry) to initiate treatment.

DOT 251.257-017. From this description, it is not clear whether the job requires any pushing or pulling, though it is classified as "light work." Therefore, the Court will order the matter remanded for the ALJ to address Plaintiff's limitations with regard to pushing and pulling, and whether such limitations preclude her from work as a pest control sales representative.

## **CONCLUSION**

For all these reasons, the Court concludes the ALJ erred in assessing the opinion of Dr. Kaplan and incorporating Plaintiff's limitations into the RFC. In addition, the ALJ erred in failing to pose a proper hypothetical question to the vocational expert.

Accordingly, the Court **HEREBY REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Lonita Lederle and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **February 17, 2011**                    /s/ Jennifer L. Thurston
                                              UNITED STATES MAGISTRATE JUDGE